## IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

CORRAL THREE, LLC, d/b/a THE           )
GOLDEN CORRAL BUFFET & GRILL,          )          19-MR-001601
GOLDEN CORRAL CORPORATION, and         )
GOLDEN CORRAL FRANCHISING              )
SYSTEMS, INC.,                         )
                                       )
              Plaintiffs,              )     Case No.:
                                       )
       v.                              )
                                       )
ALLIED INSURANCE COMPANY               )
OF AMERICA,                            )
                                       )
              Defendant.               )

*Thomas M. Hartwell*
Clerk of the Circuit Court
Kane County, Illinois

**12/17/2019 10:30 AM**

FILED/IMAGED

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COME Plaintiffs, CORRAL THREE, LLC, d/b/a THE GOLDEN CORRAL

BUFFET & GRILL ("Corral Three"), GOLDEN CORRAL CORPORATION ("GCC"), and

GOLDEN CORRAL FRANCHISING SYSTEMS, INC. ("GCFS") (collectively "Plaintiffs"),

by and through their attorneys, Herschman Levison Hobfoll PLLC, and for their

Complaint for Declaratory Judgment and Other Relief against ALLIED INSURANCE

COMPANY OF AMERICA ("AICOA" or "Defendant"), alleges as follows:

### INTRODUCTION

1.       This is a breach of contract and an insurance coverage action brought by

Corral Three, GCC and GCFS seeking a declaration that (1) Plaintiffs are afforded

coverage under the Policies issued by AICOA to the Corral Three with respect to a lawsuit

filed against Corral Three and GCC; (2) AICOA is estopped from raising coverage

defenses; and (3) AICOA acted in bad faith when it wrongfully denied coverage entitling

**NOTICE**
**BY ORDER OF THE COURT THIS CASE IS HEREBY SET FOR**
**CASE MANAGEMENT CONFERENCE ON THE DATE BELOW.**
**FAILURE TO APPEAR MAY RESULT IN THE CASE BEING**
**DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.**
**Judge: Busch, Kevin T**                    **4/6/2020 9:00 AM**

Plaintiffs to attorney's fees and other statutory damages pursuant to 215 ILCS 5/155.

## PARTIES

2. Corral Three is an Illinois Corporation that owns and operates a Golden Corral restaurant franchise located at 1591 S. Randall Road, Algonquin, Illinois, 60102.

3. GCC is a North Carolina corporation that owns and operates a restaurant business.

4. GCFS is a Delaware corporation with its principal offices in Raleigh, North Carolina that is with a wholly-owned subsidiary of GCC and, as franchisor, franchised a Golden Corral restaurant to Corral Three pursuant to a franchise agreement entered into by and between GCFS, as franchisor, and Corral Three, as franchisee.

5. Upon information and belief, AICOA is an Iowa corporation that is authorized to sell insurance in Illinois.

## THE POLICY

6. AICOA issued to Corral Three a Premier Businessowners Policy bearing Policy Number ACP BPFL 3018304861 for the Policy Period of June 6, 2019 to June 6, 2020 (the "Policy"). A true and correct copy of the Common Declarations for the Policy Period is attached hereto and incorporated herein by reference as **Exhibit 1**.

7. The Common Declarations of the Policy name GCC and GCSF as Additional Insureds on. *See* Ex. 1.

8. The Policy contains an Employment Practices Liability Insurance endorsement ("EPLI Endorsement") that extends coverage to provide claims made and

reported coverage for certain employment practices. A true and correct copy of the EPLI Endorsement is attached hereto and incorporated herein by reference as **Exhibit 2**.

9. The Insuring Agreement, as modified by the EPLI Endorsement, provides that Defendant shall afford insurance coverage as follows:

1. **Insuring Agreement**

   a. We will pay on behalf of the insured for "damages" in excess of the Deductible arising out of any "wrongful acts" to which this insurance applies.

   We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in paragraph 2. below.

   b. This insurance applies to such "damages" only if:
   (1) The "damages" result from "claims" made by:
       (a) "Employees";
       (b) "Leased workers";
       (c) "Temporary workers";
       (d) Former "employees"; or
       (e) Applicants for employment by you;

   (2) The "wrongful acts" take place in the "coverage territory";

   (3) Such "wrongful acts" occurred:
       (a) After the Retroactive Date, if any, shown in the Declarations; and
       (b) Before the end of the policy period; and

   (4) A "claim" is both:
       (a) First made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section VI. EXTENDED REPORTING PERIODS; and
       (b) Reported to us either **(i)** during the policy period or within thirty (30) days thereafter; or **(ii)** with respect to any "claim" first made during any Extended Reporting Period we provide under Section VI. EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

3

    c. A "claim" will be deemed to have been made at the earlier of the following times:
      (1) When notice of such "claim" is received and recorded by you or by us, whichever comes first; or
      (2) When we make settlement in accordance with paragraph 2.b.(2) below.

    d. All "claims" by one or more claimants for "damages" based on or arising out of:
      (1) One "wrongful act"; or
      (2) An "interrelated" series of "wrongful acts";

    by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

    e. Each payment we make for "damages" or "defense expense" reduces the Amount of Insurance available, as provided under Section III. LIMITS OF INSURANCE.

Ex. 2.

    10.    The Policy's "**Duties in the Event of 'Wrongful Acts' or 'Claims'**", as modified by the EPLI Endorsement, provides in relevant part:

    b. If a "claim" is received by any insured:
      (1) You must immediately record the specifics of the "claim" and the date received;
      (2) You and any other involved insured must see to it that we receive written notice of the "claim", as soon as practicable, but in any event we must receive notice either:
        (a) During the policy period or within thirty (30) days thereafter; or
        (b) With respect to any "claim" first made during any Extended Reporting Period we provide under Section VI. EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

    As a condition precedent for coverage under this insurance, notice of a "claim" must include the detailed information required in paragraphs 4.a.(1), (2) and (3); and

      (3)    You and any other involved insured must:

(a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";
(b) Authorize us to obtain records and other information;
(c) Cooperate with us in the investigation, settlement or defense of the "claim"; and
(d) Assist us, upon our request, in the enforcement of any right against any person or organization, which may be liable to the insured because of injury or damage to which this insurance may also apply.

Ex. 2.

11.    The Policy, as modified by the EPLI Endorsement, defines the term "claim"

to include:

**"Claim"** means written or oral notice presented by:

a.  Any "employee," "leased worker," "temporary worker," former "employee" or applicant for employment by you; or
b.  The EEOC or any other federal, state or local administrative or regulatory agency on behalf of a person described in paragraph 2.a. above,

alleging that the insured is responsible for "damages" as a result of injury arising out of any "wrongful act".

"Claim" includes any civil proceeding in which either damages" are alleged or fact finding will take place, when either is the result of any "wrongful act" to which this insurance applies. This includes:

(i)   An arbitration proceeding in which such "damages" are claimed and to which the insured submits with our consent;
(ii)  Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or
(iii) Any administrative proceedings as established under federal, state or local laws applicable to "wrongful acts" covered under this insurance.

Ex. 2.

12.    The Policy, modified by the EPLI Endorsement, defines the term

"damages" to include:

> **"Damages"** means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing.

> "Damages" include:
> a. "Pre-judgment interest" awarded against the insured on that part of the judgment we pay;
> b. Any portion of a judgment or award, to the extent allowed by law, that represents a multiple of the compensatory amounts, punitive or exemplary damages; and
> c. Statutory attorney fees.

> "Damages" do not include:
> (1) Civil, criminal, administrative or other fines or penalties;
> (2) Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money; or
> (3) Judgments or awards because of acts deemed uninsurable by law.

Ex. 2.

13.     The Policy, as modified by the EPLI Endorsement, defines the term "employment practices" as "any remedy which is sought by any of your… 'employees'… under any civil employment law whether federal, state or local and whether arising out of statutory or common law, because of any of the following actual or alleged practices… (7) harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by any federal, state or local statute." *See* Ex. 2.

### THE UNDERLYING LAWSUIT

14.     On September 25, 2019, Erika Camp ("Camp"), a server employed by Corral

6

Three, filed a lawsuit against Corral Three, GCC and Diego Cancela-Arcos in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois, Case No.: 19-L-000453. The lawsuit was subsequently removed to federal court and is now pending in the United States District Court for the Northern District of Illinois, Eastern Division, Case No.: 1:19-cv-7256 (the "Underlying Suit").

15.     In her complaint, which was served on Corral Three on October 3, 2019, Erika Camp ("Camp" or "Underlying Plaintiff") characterized her action as one for claims of sexual harassment under the Illinois Human Rights Act, as amended, 775 ILCS 5/1 *et seq.* ("IHRA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000, *et seq.* ("Title VII"), negligent supervision, negligent retention, and the Illinois Gender Violence Act. In the "Facts Common to All Counts" section of the Complaint, Camp alleges that the sexual harassment related to her employment as a server with Corral Three.

16.     In or around December 2018, Corral Three reported to the "agency" identified on the Policy, McCashland Kirby Insurance Agency ("McCashland"), that Camp alleged being subjected to sexual harassment at work. Corral Three inquired about potential coverage if Camp filed a lawsuit and McCashland told Corral Three that the Policy did not provide any coverage whatsoever for employment practices.

17.     On November 12, 2019, Corral Three reported the Underlying Suit to AICOA.

18.     By letter dated December 5, 2019, without discussion or analyzing any provision of the Policy, Defendant denied coverage for the Underlying Suit. Pursuant to

the terms of an earlier policy that expired before the Underlying Suit was filed, Defendant denied coverage solely because it concluded that the "claim" was not made and reported during the earlier policy period. Defendant asserted no other coverage defenses. A true and correct copy of the Defendant's December 5, 2019 denial letter is attached hereto and incorporated herein by reference as **Exhibit 3**.

19.     Thereafter, Corral Three challenged and disputed Defendant's coverage position. By email dated December 11, 2019, Defendant maintained its position that there was no coverage for the Underlying Suit because it was not timely reported.

20.     As a result of Defendant's denial coverage, Plaintiffs face incurring significant sums to defend and potentially settle the Underlying Lawsuit, all of which are covered under the Policy and which Defendant should pay.

**COUNT I**
**BREACH OF CONTRACT**

21.     Plaintiffs incorporates and re-alleges Paragraphs 1 through 20 as Paragraph 21.

22.     Plaintiffs complied with all obligations under the Policy.

23.     Plaintiffs timely reported the Underlying Suit to AICOA.

24.     The Policy requires AICOA to defend Plaintiffs in the Underlying Suit.

25.     The Policy requires AICOA to indemnify Plaintiffs in the Underlying Suit.

26.     AIOCA breached the Policy when it refused to provide either a defense or indemnity to Plaintiffs for the Underlying Suit.

27.     As a consequence of AICOA's breach, Plaintiffs have been injured and

8

continue to suffer damages incurred in defending the Underlying Suit.

WHEREFORE, Plaintiffs, CORRAL THREE, LLC, d/b/a THE GOLDEN CORRAL BUFFET & GRILL, GOLDEN CORRAL CORPORATION, and GOLDEN CORRAL FRANCHISING SYSTEMS, INC. respectfully request that this Court enter judgment in their favor and against ALLIED INSURANCE COMPANY OF AMERICA and award Plaintiffs damages equal to the amount of all defense fees and costs and any potential judgment entered in the Underlying Suit as well as any other relief this Court deems just and necessary.

## COUNT II
## DECLARATORY JUDGMENT

28.     Plaintiffs incorporate and re-allege Paragraphs 1 through 20 as Paragraph 28.

29.     An actual controversy exists between the parties.

30.     Plaintiffs complied with all obligations under the Policy.

31.     Plaintiffs timely reported the Underlying Suit to AICOA.

32.     The Policy requires AICOA to defend Plaintiffs in the Underlying Suit.

33.     The Policy requires AICOA to indemnify Plaintiffs in the Underlying Suit.

34.     AICOA refuses to defend or indemnify Plaintiffs in the Underlying Suit. *See* Ex. 3.

35.     Pursuant to Illinois law, an insurer that takes the position that a complaint potentially alleging coverage is not covered under a policy may not simply refuse to defend its insured. Instead, the insurer has two options: (1) defend the complaint under

a reservation of rights, or (2) seek a declaratory judgment that there is no coverage. An insurer that fails to take either of these steps and is later found to have wrongfully denied coverage will be later estopped from raising policy defenses to coverage.

36.    Defendant wrongfully denied coverage for the Underlying Suit pursuant to the provisions of an earlier policy. Defendant has never asserted any defense to coverage under the Policy, or otherwise preserved any defenses under the Policy.

37.    Defendant refuses to defend the Underlying Suit pursuant to a reservation of rights or seek a declaratory judgment that there is no coverage under any policy.

38.    Because Defendant failed to take either course of action, and because it owes a defense obligation under the Policy, Defendant is estopped from asserting any defenses to coverage.

WHEREFORE, Plaintiffs, CORRAL THREE, LLC, d/b/a THE GOLDEN CORRAL BUFFET & GRILL, GOLDEN CORRAL CORPORATION, and GOLDEN CORRAL FRANCHISING SYSTEMS, INC. respectfully request that this Court enter judgment in its favor and against ALLIED INSURANCE COMPANY OF AMERICA, declaring and finding as follows:

a.    That Plaintiffs timely reported the Underlying Suit to AICOA;

b.    That AICOA has obligation to defend and indemnify Plaintiffs under the Policy for the Underlying Suit;

c.    That AIOCA is estopped from raising coverage defenses; and,

d.    Grant Plaintiffs such other relief as this Court deems proper.

## COUNT III
## SECTION 155 BAD FAITH AGAINST AICOA

39.     Plaintiffs incorporate and re-allege Paragraphs 1 through 20 as Paragraph

39.

40.     At all relevant times, Section 154.6 of Illinois Insurance Code provided, in

pertinent part, that:

> Any of the following acts by a company, if committed without just cause
> and in violation of Section 154.5, constitutes an improper claims practice:
>
> (a)     Knowingly misrepresenting to claimants and insureds
> relevant facts or policy provisions relating to coverages at
> issue;
>
> (b)     Failing to acknowledge with reasonable promptness
> pertinent communications with respect to claims arising
> under its policies;
>
> *       *       *
>
> (g)     Engaging in activity which results in a disproportionate
> number of lawsuits to be filed against the insurer or its
> insureds by claimants;
>
> *       *       *
>
> (n)     Failing in the case of the denial of a claim or the offer of a
> compromise settlement to promptly provide a reasonable and
> accurate explanation of the basis in the insurance policy or
> applicable law for such denial or compromise settlement;
>
> *       *       *
>
> (r)     Engaging in any other acts which are in substance equivalent
> to any of the foregoing.

215 ILCS 5/154.6.

41.     At all relevant times, Section 155 of Illinois Insurance Code provided that:

11

(1)   In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

   (a)   60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

   (b)   $60,000;

   (c)   the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, in any, which the company offered to pay in settlement of the claim prior to the action.

(2)   Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

215 ILCS 5/155.

42.     The Underlying Suit is a Claim that triggers coverage under the Insuring Agreement of the Policy, as modified the EPLI Endorsement, because it is a Claim first made against an Insured during the Policy Period and timely reported to the Defendant.

43.     Pursuant to the Policy, as modified by the EPLI Endorsement, AICOA was obligated to pay for the "damages" of Plaintiffs as a result of the Underlying Suit as well as the "defense expense" incurred by Plaintiffs in the Underlying Suit. AICOA wrongfully denied that it owed any coverage obligations to Plaintiffs and refuses to make any payment to Plaintiffs for "damages" or "defense expense."

44.     AICOA's refusal to defend and/or indemnify Plaintiffs for the Underlying

Suit is vexatious and reasonable in one or more of the following ways:

a.  Defendant failed to analyze, or express any position, on coverage under the Policy, which was the appropriate policy to respond to the Underlying Suit and determines Defendant's coverage obligation;

b.  Defendant incorrectly analyzed coverage under, and based its coverage position on, an expired and inapplicable policy from an earlier policy period;

c.  Defendant failed to consider, investigate or analyze extenuating circumstances which may have excused or nullified the purported late notice insofar as Corral Three reported a potential claim to McCashland and was told by McCashland that the Policy did not provide employment practices coverage;

d.  Defendant's coverage position is supported neither by applicable case law nor the applicable policy wording insofar as the Charge of Discrimination filed by the Underlying Plaintiff with Illinois Department of Human Rights and U.S. Equal Employment Opportunity Commission (the "Charge of Discrimination") did not allege "damages";

e.  Defendant improperly merged or interrelated the Underlying Suit with the prior Charge of Discrimination because the Charge of Discrimination was not a "claim" under the policies;

f.  Defendant improperly denied coverage because the Policy contains no language that permits Defendant to unilaterally deem the Underlying Suit to be "first made" months before it was filed by relating the Underlying Suit back to the Charge of Discrimination;

g.  To the extent that the Charge of Discrimination is deemed to be a "claim" under the Policy, Defendant improperly failed to consider all of the Policy wording which makes clear that multiple "claims" can arise from the same set of facts;

h.  Defendant's conduct was otherwise vexatious and unreasonable.

45.  As a result of Defendant's vexatious and unreasonable denial of coverage,

Corral Three faces the possibility of financial ruin insofar as Corral Three does not have

the resources to mount a proper and complete defense to the Underlying Suit.

13

46.     As a result of Defendant's vexatious and unreasonable conduct, Plaintiffs are entitled to an award of attorney's fees and other statutory damages pursuant to Section 155 of the Illinois Insurance Code.

WHEREFORE, Plaintiffs, CORRAL THREE, LLC, d/b/a THE GOLDEN CORRAL BUFFET & GRILL, GOLDEN CORRAL CORPORATION, and GOLDEN CORRAL FRANCHISING SYSTEMS, INC. respectfully request that this Court enter judgment in their favor and against ALLIED INSURANCE COMPANY OF AMERICA and award Plaintiffs the following:

a.      Statutory damages as provided for in 215 ILCS 5/155;

b.      Attorney's fees and costs incurred in this action as provided for in 215 ILCS 5/155; and,

c.      Any other relief this Court deems proper.

Dated:  December 16, 2019                    Respectfully submitted,

                              By:     /s/Bradley S. Levison
                                      One of Plaintiffs' Attorneys

Bradley S. Levison (ARDC: 6280465)
Carrie A. Herschman (ARDC: 6283083)
Herschman Levison Hobfoll PLLC
401 S. LaSalle St., Suite 1302G
Chicago, IL 60605
(312) 870-5800
(312) 786-5921 (fax)
brad@hlhlawyers.com
carrie@hlhlawyers.com

14

**Nationwide®**
is on your side

ALLIED INSURANCE CO OF AMERICA          26   24158
1100 LOCUST ST DEPT 1100                      RENEWAL
DES MOINES, IA 50391-2000

# PREMIER BUSINESSOWNERS POLICY

### PREMIER FOOD SERVICE
### COMMON DECLARATIONS

Policy Number: **ACP   BPFL   3028304861**

Named Insured: **CORRAL THREE, LLC - DBA**
**GOLDEN CORRAL**
Mailing Address: **1591 S RANDALL RD**
**ALGONQUIN, IL   60102-5933**
Agency: **MCCASHLAND KIRBY INS AGNCY INC**
Address: **LINCOLN NE   68505-3092**
Agency Phone Number: **(402)466-2800**

```
EXHIBIT
   1
```

Policy Period: Effective From **06-06-19**   To **06-06-20**
12:01 AM Standard Time at your principal place of business.

Form of your business entity: **LIMITED LIABILITY CO**

Description of your business: **BUFFET STYLE RESTAURANT**

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

**CONTINUATION PROVISION:** If we offer to continue your coverage and you or your representative do not accept,
this policy will automatically terminate on the expiration date of the current policy period stated above. Failure to
pay the required premium when due shall mean that you have not accepted our offer to continue your coverage.
This policy will terminate sooner if any portion of the current policy period premium is not paid when due.

**RENEWAL POLICY NOTICE:** In an effort to keep insurance premiums as low as possible, we have streamlined
your renewal policy by not including printed copies of policy forms or endorsements that have not changed from
your expiring policies, unless they include variable information that is unique to you. Refer to your prior policies for
printed copies of these forms. If you have a need for any form, they are available by request from your agent.

TOTAL POLICY PREMIUM $   **13,089.00**

| Previous Policy Number | STATUS | I | TOTAL AGENT COMMISSION | $ | 1,963.35 |
|---|---|---|---|---|---|
| **ACP   BPFL   3018304861** | ENTRY DATE | 04-23-19 | Countersignature | | Date |

These Common Policy Declarations, together with the Common Policy Conditions, Coverage Form Declarations,
Coverage Forms and any endorsements issued to form a part thereof, complete the Policy numbered above.

**PB 81 00 (01-01)**                                        **Page 1 of 2**

DIRECT BILL   L6D7        SIB      AGENT COPY              UID   06        43  20443

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**SCHEDULE OF NAMED INSUREDS**

Policy Period:

Policy Number: **ACP**   **BPFL**   **3028304861**                    From **06-06-19**     To **06-06-20**

Named Insured:

**CORRAL THREE, LLC - DBA**
**GOLDEN CORRAL**

**AGENT COPY**                                               **43   20444**

**ALLIED INSURANCE COMPANY OF AMERICA**

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its president and secretary and countersigned as may be required on the declarations page by a duly authorized representative of the company.

SECRETARY                                PRESIDENT

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**
**PROPERTY DECLARATIONS**

Policy Period:

Policy Number: **ACP BPFL3028304861**

From **06-06-19** To **06-06-20**

Description of Premises Number: **001**   Building Number: **001**   Construction: **FRAME**
Premises Address **1591 S RANDALL RD**                                          **ALGONQUIN**        **IL**              **60102-5933**
Premises ID **LOC 1**
Occupancy  **OO**   Classification: **AMERICAN FOOD - FAMILY STYLE - FRANCHISE - NO BAR**

Described as: **RESTAURANT**

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a **$ 1,000** Deductible, unless otherwise stated.

| COVERAGES | | | LIMITS OF INSURANCE |
|---|---|---|---|
| Building - Replacement cost | | | **$1,915,700** |
| Business Personal Property - Replacement cost | | | **$529,500** |

**ADDITIONAL COVERAGES - the Coverage Form Includes other Additional Coverages not shown.**

| | | | |
|---|---|---|---|
| Business Income - ALS - 12 Months - NO Hour Waiting Period - 60 Day Ordinary Payroll Limit | | | **INCLUDED** |
| Extra Expense - Actual Loss Sustained (ALS) - 12 Months - NO Hour Waiting Period | | | **INCLUDED** |
| Equipment Breakdown | | | **INCLUDED** |
| Automatic Increase in Insurance - Building | | | **4%** |
| Automatic Increase in Insurance - Business Personal Property | | | **2.9%** |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000 policy aggregate) | | | **$5,000** |
| Appurtenant Structures - 10% of Building Limit of Insurance - maximum $50,000 any one structure | | | **INCLUDED** |
| Increased Cost of Construction | | | **$25,000** |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit | |
|---|---|---|---|
| Account Receivable | $25,000 | | **$25,000** |
| Valuable Papers and Records (At the Described Premises) | $25,000 | | **$25,000** |
| Forgery and Alteration | $10,000 | | **$10,000** |
| Money and Securities - Inside the Premises | $10,000 | | **$10,000** |
| Outside the Premises (Limited) | $10,000 | | **$10,000** |
| Outdoor Signs | $2,500 | | **$2,500** |
| Outdoor Trees, Shrubs, Plants and Lawns | $10,000 | | **$10,000** |
| Business Personal Property Away From Premises | $15,000 | | **$15,000** |
| Business Personal Property Away From Premises - Transit | $15,000 | | **$15,000** |
| Electronic Data | $10,000 | | **$10,000** |
| Interruption of Computer Operations | $10,000 | | **$10,000** |
| Building Property of Others | $10,000 | | **$10,000** |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | | | |
|---|---|---|---|
| Employee Dishonesty    $5,000 Policy Occurrence | | | **INCLUDED** |
| Ordinance or Law - 1 - Loss to Undamaged Portion | | | **NOT PROVIDED** |
| 2 - Demolition Cost and Broadened Increased Cost of Construction | | | **NOT PROVIDED** |
| Ordinance or Law Broadened | | | **NOT PROVIDED** |
| Food Service PLUS Endorsement (PB2002) | | | **INCLUDED** |
| Spoilage From Power Outage - $500 Deductible | | | **$10,000** |

**PROTECTIVE SAFEGUARDS**
This premise has Protective Safeguards identified by symbols below. Insurance for Fire or Burglary and Robbery at this premise will be excluded if you do not notify us immediately if any of these safeguards are impaired.
See **PB 04 30** for a description of each symbol. APPLICABLE SYMBOLS: **P-1; P-8;**

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**MORTGAGEE ASSIGNMENT INFORMATION**

Policy Number: **ACP BPFL3028304861**

Policy Period:
From **06-06-19** To **06-06-20**

Additional Interest: **M**    Interest Number: **1**    Loan Number:
Interest: **LOC 1-1**
**GOLDEN CORRAL CORP**

**515 GLENWOOD AVE, RALEIGH, NC, 27603-1221**

Additional Interest: **L**    Interest Number: **2**    Loan Number:
Interest: **LOC 1-1**
**GOLDEN CORRAL CORP**

**515 GLENWOOD AVE, RALEIGH, NC, 27603-1221**

Additional Interest: **M**    Interest Number: **3**    Loan Number:
Interest: **LOC 1-1**
**GOLDEN CORRAL FRANCHISING SYSTEMS INC**
**515 GLENWOOD AVE, RALEIGH, NC, 27603-1221**

Additional Interest: **L**    Interest Number: **4**    Loan Number:
Interest: **LOC 1-1**
**GOLDEN CORRAL FRANCHISING SYSTEMS INC**
**515 GLENWOOD AVE, RALEIGH, NC, 27603-1221**

Additional Interest:    Interest Number:    Loan Number:
Interest:

Additional Interest:    Interest Number:    Loan Number:
Interest:

Additional Interest:    Interest Number:    Loan Number:
Interest:

Additional Interest:    Interest Number:    Loan Number:
Interest:

Additional Interest:    Interest Number:    Loan Number:
Interest:

Additional Interest:    Interest Number:    Loan Number:
Interest:

# PREMIER BUSINESSOWNERS POLICY
### PREMIER FOOD SERVICE
## LIABILITY DECLARATIONS

|  |  |
|---|---|
| Policy Number:  **ACP  BPFL  3028304861** | Policy Period:<br>From **06-06-19**  To **06-06-20** |

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit of Insurance | Per Occurrence | **$1,000,000** |
| Medical Payments Coverage Sub Limit | Per Person | **$5,000** |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | **$300,000** |
| Personal and Advertising Injury | Per Person Or Organization | **$1,000,000** |
| Products – Completed Operations Aggregate | All Occurrences | **$2,000,000** |
| General Aggregate | All Occurrences | **$2,000,000** |
| (Other than Products – Completed Operations) | | |

## AUTOMATIC ADDITIONAL INSUREDS STATUS

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

Co-Owners of Insured Premises
Controlling Interest
Grantor of Franchise or License
Lessors of Leased Equipment
Managers or Lessors of Leased Premises
Mortgagee, Assignee or Receiver
Owners or Other Interest from Whom Land has been Leased
State or Political Subdivisions - Permits Relating to Premises

## PROPERTY DAMAGE DEDUCTIBLE
NONE

## OPTIONAL COVERAGES

| | |
|---|---|
| Employment Practices Liability Insurance | |
| Each Claim & Aggregate Limits for Damages | **$100,000** |
| Each Claim & Aggregate Limits-Defense Expense     **INCLUDED** | |
|  Retroactive Date 06/06/17 Deductible  $2,500 | |
| SEE ATTACHED LIABILITY DECLARATION SUPPLEMENT | |

The Liability portion of your total policy premium is an advance premium and may be subject to adjustment

# PREMIER BUSINESSOWNERS POLICY

### PREMIER FOOD SERVICE

## FORMS AND ENDORSEMENTS SUMMARY

Policy Period:

Policy Number: **ACP  BPFL   3028304861**                    From **06-06-19**  To **06-06-20**

| FORM NUMBER | | TITLE |
|---|---|---|
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0002 | 1114 | PREMIER BUSINESSOWNERS |
| PB0006 | 1114 | PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM |
| PB0009 | 1114 | PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS |
| PB0430 | 0917 | PROTECTIVE SAFEGUARDS |
| PB0523 | 0715 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| PB0589 | 0311 | EMPLOYMENT PRACTICES LIABILITY |
| PB1504 | 1114 | ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION |
| PB2002 | 1114 | FOOD SERVICE PLUS ENDORSEMENT |
| PB2998 | 0908 | EXCLUSION - VIOLATION OF CONSUMER PROTECTION STATUTES |
| PB2999 | 0215 | EXCLUSION - FUNGI OR BACTERIA |
| PB5803 | 0215 | FRANCHISE UPGRADE ENDORSEMENT |
| PB5805 | 1114 | DATA COMPROMISE COVERAGE RESPONSE EXPENSES AND DEFENSE AND L |
| PB5807 | 1114 | CYBERONE COVERAGE |
| PB5809 | 1114 | IDENTITY RECOVERY COVERAGE |
| PB9012 | 0316 | ILLINOIS AMENDMENT ENDORSEMENT |
| PB1203 | 0101 | LOSS PAYABLE PROVISIONS |

## IMPORTANT NOTICES

| | | |
|---|---|---|
| IN7058 | 0115 | ILLINOIS NOTICE AND WAIVER OF MINE SUBSIDENCE COVERAGE |
| IN7404 | 0107 | IMPORTANT FLOOD INSURANCE NOTICE |
| IN7526 | 0718 | IMPORTANT INFORMATION REGARDING YOUR INSURANCE |
| IN7809 | 1115 | DATA BREACH & IDENTITY RECOVERY SERVICES |
| IN7830 | 0816 | EMPLOYMENT PRACTICES LIABILITY SERVICES |
| IN7854 | 0717 | PROTECTIVE SAFEGUARDS ENDORSEMENT ADVISORY NOTICE TO POLICYH |

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**LIABILITY DECLARATIONS SUPPLEMENT**

Policy Number: **ACP BPFL 3028304861**

Policy Period:
From **06-06-19**  To **06-06-20**

| OPTIONAL COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Data Compromise Coverage | |
|   Response Expense Limit | $50,000 |
|   Response Expense Deductible | $1,000 |
|     Sublimits | |
|       Named Malware Limit(Sec.1) | $50,000 |
|       Forensic IT Review Limit | $5,000 |
|       Legal Review Limit | $5,000 |
|       PR Services Limit | $5,000 |
|   Defense and Liability Limit | $50,000 |
|   Defense and Liability Deductible | $1,000 |
|     Named Malware Limit(Sec.2) | $50,000 |
| Identity Recovery Limit | |
|   Expense Reimbursement Limit | $25,000 |
|     Sublimits | |
|       Lost Wages/Child Elder | $5,000 |
|       Mental Health Expenses Limits | $1,000 |
|       Miscellaneous Expensed Limits | $1,000 |
| CyberOne Coverage | |
|   Section 1 - Full Computer Attack | |
|   Computer Attack Limit | $50,000 |
|   Computer Attack Deductible | $5,000 |
|     Sublimits | |
|       Data Re-Creation | EXCLUDED |
|       Loss of Business | EXCLUDED |
|       Public Relations | EXCLUDED |
|   Section 2 - Full Network Security Liability | |
|   Network Security Liability Limit | EXCLUDED |
|   Network Security Liability Deductible | EXCLUDED |

# PREMIER BUSINESSOWNERS POLICY

**PREMIER FOOD SERVICE**

**AGENT PREMIUM SUMMARY**

Policy Number: **ACP BPFL 3028304861**                Policy Period:
From **06-06-19** To **06-06-20**

| Loc /Bldg | Coverage | Limits | Premium |
|---|---|---|---|
| | **POLICY WIDE OPTIONAL COVERAGES** | | |
| | **EMPLOYEE DISHONESTY** | 5,000 | 99 |
| | **EMPLOYMENT-RELATED PRACTICES LIABILITY** | 100,000 | 944 |
| | **DATA COMPROMISE** | SEE PB8105 | 110 |
| | **CYBERONE** | SEE PB8105 | 46 |
| 01 01 | **BUILDING** | 1,915,700 | 3,420 |
| | **PERSONAL PROPERTY** | 529,500 | 2,443 |
| | **BUSINESS INCOME** | INCLUDED | 403 |
| | **PLUS PREMIUM** | INCLUDED | 165 |
| | **FRANCHISE PREMIUM** | INCLUDED | 103 |
| | **EQUIPMENT BREAKDOWN** | INCLUDED | 422 |
| | **LIABILITY** | 1,000,000 | 4,934 |
| | **BUILDING TOTAL PREMIUM** | | 11,890 |

If an * is shown for a coverage, then the limit shown is the additional amount of insurance for that coverage -
see the Declarations page for the total amount.

**PB 81 PS (01-01)**

**DIRECT BILL    L6D7        SIB        AGENT COPY                UID    06            43  20451**

EFFECTIVE DATE: 12:01 AM Standard Time,               **BUSINESSOWNERS**
     (at your principal place of business)                      **PB AI 09 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS
# MORTGAGEE, ASSIGNEE OR RECEIVER

**Person or Organization Designated as an Additional Insured:**

**H&H GOLDEN CORRAL LLC**

**1556 VIA ZURITA**
**PALOS VERDES ESTATES  CA 902741932**

**Designated Premises:**

**1591 S RANDALL RD**
**ALGONQUIN      IL 601025933**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

Mortgagee, Assignee or Receiver

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured            **CORRAL THREE, LLC - DBA**

Issuing Company:        **AICOA**

Policy Number:          **ACP BPFL3028304861**

Policy Term:             **06-06-19 To 06-06-20**

Limits of Insurance:      **Per Occurrence**      **$1,000,000**
                           **All Occurrences**      **$2,000,000**

EFFECTIVE DATE: 12:01 AM Standard Time,
    (at your principal place of business)

**BUSINESSOWNERS**
**PB AI 99 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS GRANTOR OF FRANCHISE OR LICENSE

**Person or Organization Designated as an Additional Insured:**
    **GOLDEN CORRAL CORP & GOLDEN CORRAL**
    **FRANCHISING SYSTEM, INC.**
    **515 GLENWOOD AVE**
    **RALEIGH**        **NC 276031221**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

    Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

    <u>Grantor of Franchise or License</u>

    Any person or organization that has granted you a franchise or license by written contract or agreement is an additional insured, but only with respect to their liability as the grantor of a franchise or license to you.

    HOWEVER, their status as additional insured under this Policy ends when their contract or agreement with you granting the franchise or license ends.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured        **CORRAL THREE, LLC - DBA**

Issuing Company:      **AICOA**

Policy Number:       **ACP BPFL3028304861**

Policy Term:         **06-06-19 To 06-06-20**

Limits of Insurance:      **Per Occurrence**      **$1,000,000**
                          **All Occurrences**      **$2,000,000**

BUSINESSOWNERS
PB 04 30 05 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

**NOTICE**

**YOU RISK THE LOSS OF CERTAIN INSURANCE COVERAGE AT PREMISES DESIGNATED IN THE DECLARATIONS IF YOU FAIL TO MAINTAIN ANY OF THE APPLICABLE PROTECTIVE SAFEGUARDS, LISTED BY SYMBOL IN THE DECLARATIONS FOR EACH PREMISES.**

**TO AVOID POTENTIAL LOSS OF COVERAGE YOU MUST REPORT ANY PROTECTIVE SAFEGUARD SUSPENSION OR DISABLEMENT BY CALLING 1-866-322-3214**

Your acceptance of this policy in the payment of premium when due constitutes your understanding and acknowledgement that you risk the loss of certain insurance at the premises designated if you fail to maintain the protective safeguard and your acceptance and agreement with the terms of this endorsement.

**SCHEDULE**

**Prem. / Bldg. No.    Description of P-9 Protective Safeguard:**

A. **CONDITION.** As a condition of this insurance, you are required to maintain the applicable protective devices or services for fire, denoted by symbols P-1, P-2, P-3, P-4, P-5, P-8, or P-9; or for burglary and robbery, denoted by symbols P-6 or P-7), as designated at each premises by symbol in the Declarations.

B. **EXCLUSIONS.** Under Section B. EXCLUSIONS, the following exclusions are added:

1. **FIRE PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard as designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard as designated at each premises by symbol in the Declarations and over which you have control, in complete working order; or

c. Add or modify any cooking equipment and operate it prior to adding or extending any Fire Suppression System that is required by code to protect it.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

2. **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damage caused by or resulting from breaking-in or theft if, prior to the breaking-in or theft, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard designated at each premises by symbol in the Declarations and over which you had control, in complete working order.

**PB 04 30 05 16**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 2**

ACP BPFL3028304861    AGENT COPY    43    20454

**PB 04 30 05 16**

C. **PROTECTIVE SAFEGUARD SYMBOLS.** The protective safeguards to which this endorsement applies are identified in the Declarations by the following symbols:

**"P-1"** **Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means:

a. Any automatic fire protective or extinguishing system, including connected:

1) Sprinklers and discharge nozzles;

2) Ducts, pipes, valves and fittings;

3) Tanks, their component parts and supports; and

4) Pumps and private fire protection mains.

b. When supplied from an automatic fire protective system:

1) Nonautomatic fire protective systems; and

2) Hydrants, standpipes and outlets.

**"P-2"** **Automatic Fire Alarm**, protecting the entire building, that is:

a. Connected to a central station; or

b. Reporting to a public or private fire alarm station.

**"P-3"** **Security Service**, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4"** **Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5"** **Watchman Service** based on contract with a privately owned security company providing premises protection services to the described premises.

**"P-6"** **Local Burglar Alarm** protecting the entire building which in the event of an unauthorized or attempted entry at the described premises, triggers a loud sounding gong or siren, or a visual device, on the outside of the building.

**"P-7"** **Central Station Burglar Alarm** protecting the entire building which, in the event of an unauthorized or attempted entry at the described premises, will automatically transmit an alarm signal to an outside Central Station or police station.

**"P-8"** **Fire Suppression System**, including related supervisory services. Fire Suppression System means any automatic fire protective or extinguishing system designed to protect cooking equipment (i.e. cooking surfaces, deep fat fryers, grease ducts and hoods) including connected:

a. Sprinklers and discharge nozzles;

b. Ducts, pipes, valves and fittings; and

c. Tanks, their component parts and supports.

**"P-9"** The protective system described in the Schedule of this endorsement.

**All terms and conditions of this policy apply unless modified by this endorsement.**

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB AI 09 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS MORTGAGEE, ASSIGNEE OR RECEIVER

**Person or Organization Designated as an Additional Insured:**

**H&H GOLDEN CORRAL LLC**

**1556 VIA ZURITA**
**PALOS VERDES ESTATES   CA 902741932**

**Designated Premises:**

**1591 S RANDALL RD**
**ALGONQUIN        IL 601025933**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

Mortgagee, Assignee or Receiver

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured        **CORRAL THREE, LLC - DBA**

| | |
|---|---|
| Issuing Company: | **AICOA** |
| Policy Number: | **ACP BPFL3028304861** |
| Policy Term: | **06-06-19 To 06-06-20** |
| Limits of Insurance: | **Per Occurrence        $1,000,000**<br>**All Occurrences      $2,000,000** |

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS
PB AI 99 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS GRANTOR OF FRANCHISE OR LICENSE

**Person or Organization Designated as an Additional Insured:**

    **GOLDEN CORRAL CORP & GOLDEN CORRAL
FRANCHISING SYSTEM, INC.
515 GLENWOOD AVE
RALEIGH           NC 276031221**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

    Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

    <u>Grantor of Franchise or License</u>

    Any person or organization that has granted you a franchise or license by written contract or agreement is an additional insured, but only with respect to their liability as the grantor of a franchise or license to you.

    HOWEVER, their status as additional insured under this Policy ends when their contract or agreement with you granting the franchise or license ends.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured        **CORRAL THREE, LLC - DBA**

Issuing Company:    **AICOA**

Policy Number:    **ACP BPFL3028304861**

Policy Term:    **06-06-19 To 06-06-20**

Limits of Insurance:    **Per Occurrence    $1,000,000
All Occurrences    $2,000,000**

**BUSINESSOWNERS**
**PB 05 89 03 11**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT PRACTICES LIABILITY INSURANCE

**THIS INSURANCE PROVIDES CLAIMS MADE AND REPORTED COVERAGE. DEFENSE COSTS APPLY AGAINST THE LIMITS OF INSURANCE AND ARE SUBJECT TO THE DEDUCTIBLE. PLEASE READ THIS COVERAGE FORM CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS.**

**IF WE HAVE ISSUED THIS COVERAGE FORM BASED UPON YOUR APPLICATION FOR THIS INSURANCE, WE HAVE DONE SO BASED UPON INFORMATION ON THAT APPLICATION, WHICH IS A REPRESENTATION OF THE CORRECTNESS OF THE INFORMATION.**

**WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS, SECTION V AND ANY OTHER APPLICABLE COVERAGE CONDITIONS.**

Throughout this Coverage form, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Coverage. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II – WHO IS AN INSURED.

## I. COVERAGE

In consideration of the payment of premium and subject to the Limits of Insurance shown in the Declarations and all the definitions, exclusions, terms and conditions of this insurance form, we agree with you as follows:

1. **Insuring Agreement**

   a. We will pay on behalf of the insured for "damages" in excess of the Deductible arising out of any "wrongful acts" to which this insurance applies.

   We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in paragraph 2. below.

   b. This insurance applies to such "damages" only if:

      (1) The "damages" result from "claims" made by:

         (a) "Employees";

         (b) "Leased workers";

         (c) "Temporary workers";

         (d) Former "employees"; or

         (e) Applicants for employment by you;

      (2) The "wrongful acts" take place in the "coverage territory";

      (3) Such "wrongful acts" occurred:

         (a) After the Retroactive Date, if any, shown in the Declarations; and

         (b) Before the end of the policy period; and

      (4) A "claim" is both:

         (a) First made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section VI. EXTENDED REPORTING PERIODS; and

         (b) Reported to us either **(i)** during the policy period or within thirty (30) days thereafter; or **(ii)** with respect to any "claim" first made during any Extended Reporting Period we provide under Section VI. EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

EXHIBIT
2

c. A "claim" will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by you or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph 2.b.(2) below.

d. All "claims" by one or more claimants for "damages" based on or arising out of:

(1) One "wrongful act"; or

(2) An "interrelated" series of "wrongful acts";

by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

e. Each payment we make for "damages" or "defense expense" reduces the Amount of Insurance available, as provided under Section III. LIMITS OF INSURANCE.

2. **Defense of Claims, Administrative Hearings & Settlement Authority**

Subject to the limits of insurance, deductible, conditions, exclusions, definitions, and other terms of this Coverage:

a. We have the right and duty to defend "claims" against the insured seeking "damages" to which this insurance applies and to pay for related, "defense expense."

However, we have no duty to:

(1) Defend "claims" against the insured seeking "damages"; or

(2) Pay for related "defense expense", when this insurance does not apply.

b. We may, at our sole discretion:

(1) Investigate any "wrongful act" that may result in "damages"; and

(2) Settle any "claim" which may result, provided:

(a) We have the insured's written consent to settle; and

(b) The settlement is within the applicable Limit of Insurance available.

c. Our liability will be limited as described below if:

(1) The insured refuses to consent to any settlement we recommend; and

(2) Such recommended settlement is acceptable to the claimant.

After such refusal, our liability under this Coverage for such "claim" shall not exceed the amount we would have paid for "damages" and "defense expense" if the insured had consented to our settlement recommendation. The insured shall thereafter be responsible for the negotiation and defense of that "claim" at their own cost and without our involvement.

d. Our right and duty to defend such "claims" ends when we have used up the Limit of Insurance available, as provided under Section III . LIMITS OF INSURANCE. This applies both to "claims" pending at that time and any that may be made.

e. (1) When we control defense of a "claim", we will pay associated "defense expense" and choose a counsel of our choice from the panel of attorneys we have selected to deal with "wrongful acts" "claims".

If you give us a specific written request at the time a "claim" is first made:

(a) You or any involved insured may select one of our panel of wrongful act attorneys; or

(b) You or such insured may ask us to consider the approval of a defense attorney of your or that insured's choice who is not on our panel.

We will then use the attorney selected in (a) above, or consider the request in (b) above, if we deem it appropriate to engage counsel for such "claim".

(2) If by mutual agreement or court order the insured assumes control of the defense before the applicable Limit of Insurance is used up, the insured will be allowed to select defense counsel and we will reimburse the insured for reasonable "defense expense". You and any involved insured must:

(a) Continue to comply with Section V. CONDITIONS, 4. Duties in Event of "Wrongful Acts" or "Claims".

(b) Direct defense counsel to:

    (1) Furnish us with the additional information we request to evaluate the "wrongful acts" or "claim"; and

    (2) Cooperate with any counsel we may select to monitor or associate in the defense of the "wrongful acts" or "claim".

If we defend any insured under a reservation of rights, both such insured's counsel and our counsel will be required to maintain records pertinent to "defense expenses". These records will be used to determine the allocation of any "defense expenses" for which you or any insured may be solely responsible, including defense of an allegation not covered by this insurance.

We will notify you in writing when the applicable limit of insurance has been used up by the payment of judgments, settlements or "defense expense". We will also initiate and cooperate in the transfer of defense of any "claim" to an appropriate insured for whom the duty to defend has ended by reason of Section I. COVERAGE paragraph 2.d. above.

f.   Upon notice to us and with our prior approval, the first Named Insured is authorized to act on behalf of all insureds with respect to the payment of "damages" in settlement of any Administrative Hearing or other non-judicial proceeding before the Federal Equal Employment Opportunity Commission, or any similar Federal, state or local body or commission. This authorization is limited to the sum of:

    (1) "Damages" covered by this Coverage; and

    (2) "Defense expenses", as defined in paragraph 5.d. in Section VII. DEFINITIONS;

in a total amount not to exceed two times the amount of the Deductible stated in the Declarations.

3.  **Exclusions**

This insurance does not apply to "claims" based on, arising out of, or in any way involving:

a.  (1) "Wrongful acts" which were the subject of any demand, suit or other proceeding which was initiated against any insured; or

    (2) Facts and circumstances which would cause a reasonable person to believe a "claim" would be made and which were known to any insured;

prior to the effective date of the earlier of:

    (i) The first Coverage of this type that we issued to you of which this Coverage was an uninterrupted renewal of this type of coverage; or

    (ii) This Coverage.

b.  Facts alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this coverage is a renewal or replacement or which it may succeed in time;

c.  Loss of any benefit conferred or loss of any obligation imposed under an express contract of employment.

d.  Any obligation to pay "damages" by reason of the assumption of liability in any contract or agreement.

However, this exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

e.  Liability arising under any of the following laws:

    (1) Any workers compensation, disability benefits or unemployment compensation law, or any similar law.

    However, this exclusion shall not apply to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law;

    (2) Employees' Retirement Income Security Act of 1974, Public Law 93-406, (ERISA) as now or hereafter amended, or any similar state or other governmental law. This includes

(a) Fiduciary liability;

(b) Liability arising out of the administration of any employee benefit plan; and

(c) Any other liability under any such laws;

(3) The Fair Labor Standards Act, or any state or common law wage or hour law, including, but not limited to laws governing minimum wages, hours worked, overtime compensation and including any recordkeeping and reporting related thereto.

This exclusion includes actions or claims brought by or on behalf of individuals or agencies seeking wages, fines, penalties, taxes, disgorgement or other affirmative relief or compensation.

This exclusion does not include claims based on the Equal Pay Act or retaliation related to Equal Pay Act claims;

(4) The National Labor Relations Act;

(5) The Worker Adjustment and Retraining Notification Act (Public Law 100-379);

(6) The Consolidated Omnibus Budget Reconciliation Act of 1985; or

(7) The Occupational Safety and Health Act.

This exclusion e. (1) – (7) also applies to:

(i) Any rules or regulations promulgated under any of the foregoing and amendments thereto,

(ii) Any similar provisions of any federal, state or local law,

(iii) That part of any "damages" awarded for the cost or replacement of any insurance benefits due or alleged to be due to any current or former "employee", and

(iv) Any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law described in this item e. This provision e.(iv) does not apply to the specific retaliation exceptions shown in items e.(1) and e.(3) above.

f. Oral or written publication of material, if such material:

(1) Was published by or at the direction of the insured with knowledge of the material's falsity; or

(2) Was first published before the Retroactive Date, if any, shown in the Declarations.

g. Dishonest, criminal or fraudulent acts of the insured.

h. The willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulation relating to "employment practices".

Willful, as used in this exclusion h., means acting with intentional or reckless disregard for such employment related laws, orders or regulations.

The enforcement of this exclusion against any insured shall not be imputed to any other insured.

i. "Bodily injury".

j. "Employment practices" which occur when or after:

(1) You file for or are placed in any bankruptcy, receivership, liquidation or reorganization proceeding; or

(2) Any other business entity acquires an ownership interest in you, which is greater than fifty percent.

k. Costs of complying with physical modifications to your premises or any changes to your usual business operations as mandated by the Americans with Disabilities Act of 1990 including any amendment thereto, or any similar federal, state or local law.

This exclusion also applies to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law described in this item k.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

l. Lockout, strike, picket line, related worker replacements or other similar actions resulting from labor disputes or labor negotiations.

This exclusion also applies to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to labor disputes or labor negotiations.

m. Any class action suit involving more than one franchisee of the same franchisor.

## II. WHO IS AN INSURED

1. For purposes of this insurance coverage, if you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your current or former members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your current or former members are also insureds, but only with respect to the conduct of your business. Your current or former managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership or joint venture, you are an insured. Your current or former directors are insureds, but only with respect to their duties as your directors.

2. Your current or former "employees" are also insureds, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

3. Any heirs, executors, administrators, assignees or legal representatives of any individual insured in subparagraphs 1. and 2. above, in the event of the death, bankruptcy or incapacity of such insured, shall be insureds, but only to the extent this insurance would have been available to such insured but for their death, bankruptcy or incapacity.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. You must provide us notice of such acquisition or formation within 30 days of the effective date of your acquisition or formation;

   b. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   c. Coverage does not apply to any "wrongful acts" that occurred before you acquired or formed the organization; and

   d. You must pay us any additional premium due as a condition precedent to the enforceability of this additional extension of coverage.

   This paragraph does not apply to any organization after it is shown in the Declarations.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III. LIMITS OF INSURANCE

1. The Amount of Insurance stated as Aggregate Limit on the Coverage Declarations is the most we will pay for the sum of:

   a. "Damages" for all "claims" arising out of any actual or alleged "wrongful acts" covered by this insurance; and

   b. "Defense expense" for all "claims" seeking "damages" payable under paragraph a. above.

   Each payment we make for such "damages" or "defense expenses" reduces the Aggregate Limit by the amount of the payment.

   This reduced limit will then be the Amount of Insurance available for further "damages" and "defense expenses" under this Coverage.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. Subject to paragraph 1. above, the Amount of Insurance stated as the Each "Claim" Limit of Insurance is the most we will pay in excess of the Deductible as further described in Section IV. DEDUCTIBLE for the sum of:

a. "Damages":

(1) For injury arising from "wrongful acts" covered by this insurance; and

(2) Arising out of one "claim"; and

b. "Defense expense" associated with that specific "claim" in item 2.a. immediately preceding.

3. In addition to the payments for "damages" and "defense expense" in paragraphs 1. and 2. above, we will also pay all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of paragraphs 1. and 2. above.

The Limits of Insurance of this Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## IV. DEDUCTIBLE

1. A deductible applies to all "damages" for injury arising from "wrongful acts" and any "defense expense" however caused.

2. Our obligation to pay "damages" and "defense expense" on behalf of any insured applies only to the sum of the amount of "damages" and "defense expense" for any one "claim" which are in excess of the deductible amount stated in the Declarations.

3. Your obligation is to pay the deductible applicable to each "claim" made against this insurance. That deductible applies to the sum of all "damages" because of injury arising from "wrongful acts" paid for any one "claim" and applicable "defense expense" associated therewith. If there should be no "damages" paid for a "claim", you are still obligated to pay the applicable deductible for

any "defense expense" incurred by us in connection with that "claim".

4. The terms of this insurance apply irrespective of the application of the deductible, including those with respect to:

a. Our right and duty to defend any "claims" seeking those "damages"; and

b. Your and any involved insured's duties in the event of a "claim".

5. We may pay any part or all of the deductible to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as we may have paid for "damages" or "defense expense".

6. The application of the deductible does not reduce the applicable Limits of Insurance.

## V. CONDITIONS

1. **Bankruptcy**

Subject to exclusion j.(1), the bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance.

2. **Cancellation**

The policy shall terminate at the earliest of the following:

a. The effective date of cancellation stated in a written notice of cancellation from us to you if the policy is cancelled for failure to pay a premium when due provided such notice is mailed to you at least ten (10) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the "policy period". Any earned premium shall be computed in accordance with the customary short rate table and procedure;

b. The effective date of cancellation stated in a written notice of termination from us to you if the policy is cancelled for any reason other than nonpayment of premium, provided such notice is mailed to you at least sixty (60) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the "policy period". Any earned premium shall be computed pro rata;

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. Upon receipt by us of the policy surrendered by you. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

d. Upon transmittal to us of written notice of termination from you stating when thereafter such termination shall be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure; or

e. Upon expiration of the Policy Period as set forth in the Declarations.

3. **Changes**

This Coverage contains all agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Coverage with our consent. This Coverage's terms can be amended or waived only by endorsement issued by us and made a part of this Coverage.

4. **Duties in the Event of "Wrongful Acts" or "Claims"**

a. You must see to it that we are notified as soon as practicable of any specific "wrongful acts" which you believe may result in an actual "claim". Your belief must be reasonably certain as the result of specific allegations made by a potential claimant or such potential claimant's representative, or as the result of specifically identifiable injury sustained by a potential claimant. Notices of "wrongful acts" should include the following detailed information:

(1) How, when and where such "wrongful acts" took place;

(2) The names and addresses of any potential claimants and witnesses; and

(3) The nature of any injury arising out of such "wrongful acts".

Notice of such "wrongful acts" is not notice of a "claim", but preserves any insured's rights to future coverage for subsequent "claims" arising out of such "wrongful acts" as described in the Basic Extended Reporting Period of Section VI. EXTENDED REPORTING PERIODS.

b. If a "claim" is received by any insured:

(1) You must immediately record the specifics of the "claim" and the date received;

(2) You and any other involved insured must see to it that we receive written notice of the "claim", as soon as practicable, but in any event we must receive notice either:

(a) During the policy period or within thirty (30) days thereafter; or

(b) With respect to any "claim" first made during any Extended Reporting Period we provide under Section VI. EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

As a condition precedent for coverage under this insurance, notice of a "claim" must include the detailed information required in paragraphs 4.a.(1), (2) and (3); and

(3) You and any other involved insured must:

(a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

(b) Authorize us to obtain records and other information;

(c) Cooperate with us in the investigation, settlement or defense of the "claim"; and

(d) Assist us, upon our request, in the enforcement of any right against any person or organization, which may be liable to the insured because of injury or damage to which this insurance may also apply.

c. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent, other than those specific payments authorized in Section I. COVERAGE, under paragraph 2.f. of DEFENSE OF CLAIMS, ADMINISTRATIVE HEARINGS & SETTLEMENT AUTHORITY.

5. **Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this insurance at any time during the policy period and up to three years thereafter.

6. **Inspections and Surveys**

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the employment conditions we find; and

c. Recommend procedures, guidelines and changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not undertake to perform the duty of any person or organization to provide for the health or safety of, or lawful practices towards your workers or the public. We do not warrant that conditions:

(i) Are safe or healthful; or

(ii) Comply with laws, regulations, codes or standards as they relate to the purpose of this or any other insurance.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations on our behalf.

7. **Legal Action Against Us**

No person or organization has a right under this Coverage:

a. To join us as a party or otherwise bring us into a "claim" seeking "damages" from any insured; or

b. To sue us on this Coverage unless all of its terms have been fully complied with.

Any person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "damages" that are not payable under the terms of this Coverage or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

8. **Other Insurance**

If other valid and collectible insurance is available to the insured for "damages" or "defense expense" we cover under this Coverage, our obligations are limited as follows:

a. As this insurance is primary insurance, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

b. If all of the other insurance permits contribution by equal shares, we will follow this method also.

Under this method, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.

Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

9. **Payment of Premiums and Deductibles Amounts**

a. We will compute all premiums for this insurance in accordance with our rules and rates; and

b. The first Named Insured shown in the Declarations is responsible for the payment of all premiums and deductibles due and will be the payee for any return premiums we pay.

10. **Representations**

By accepting this Coverage you agree:

a. The statements in the Application are accurate and complete;

b. Those statements are the basis of this endorsement and are to be considered as incorporated into and constituting a part of the Policy;

c. Those statements are material to the acceptance of the risk assumed by the company; and

d. Since we have issued this endorsement in reliance upon your representations, this insurance is voidable if any material fact or circumstance relating to the subject of this insurance is omitted or misrepresented in your application.

Coverage provided elsewhere in this policy for unintentional errors or omissions do not apply to an application for or coverage provided by this endorsement.

**11. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom "claim" is made.

**12. Sole Agent**

The first Named Insured is authorized to act on behalf of all insureds as respects the giving or receiving of notice of cancellation or nonrenewal, receiving premium refunds, requesting any Supplemental Extended Reporting Period and agreeing to any changes in this Coverage.

**13. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will sue those responsible or transfer those rights to us and help us enforce them.

**14. Transfer of Your Rights and Duties Under This Coverage**

Your rights and duties under this Coverage may not be transferred without our written consent.

**15. When We Do Not Renew**

If we decide not to renew this insurance, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

**VI. EXTENDED REPORTING PERIODS**

1. We will provide Extended Reporting Periods, as described below, if:

   a. This Coverage is cancelled or not renewed; or

   b. We renew or replace this Coverage with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Declarations; or

      (2) Does not apply on a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" as the result of "wrongful acts" committed after the Retroactive Date, if any, shown in the Declarations and before the end of the policy period. Once in effect, Extended Reporting Periods may not be cancelled.

3. Extended Reporting Periods do not reinstate or increase the Limits of Insurance.

4. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

   a. Five years with respect to "claims" arising out of "wrongful acts" which had been properly reported to us before the end of the policy period in accordance with Section V. CONDITIONS, under paragraph 4.a. of Duties in the Event of "Wrongful Acts" or "Claims"; and

   b. Sixty-days with respect to "claims" arising from "wrongful acts" not previously reported to us.

   The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

5. A Supplemental Extended Reporting Period is available, but only by endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period set forth in paragraph 4.b. above ends. You must give us a written request for the endorsement, and its length, within 30 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the

**PB 05 89 03 11**

additional premium when due. We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;

b. Previous types and amounts of insurance;

c. Limits of Insurance available under this Coverage for future payment of "damages" or "defense expense"; and

d. Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage.

6. The Supplemental Extended Reporting Period Endorsement we issue shall set forth the terms, not inconsistent with this VI. EXTENDED REPORTING PERIODS, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period begins.

**VII. DEFINITIONS**

The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. **"Bodily injury"** means physical injury to the body, sickness or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time. "Bodily injury" does not include mental anguish that results from a "wrongful act".

2. **"Claim"** means written or oral notice presented by:

a. Any "employee," "leased worker," "temporary worker," former "employee" or applicant for employment by you; or

b. The EEOC or any other federal, state or local administrative or regulatory agency on behalf of a person described in paragraph 2.a. above,

alleging that the insured is responsible for "damages" as a result of injury arising out of any "wrongful act".

"Claim" includes any civil proceeding in which either "damages" are alleged or fact

finding will take place, when either is the result of any "wrongful act" to which this insurance applies. This includes:

(i) An arbitration proceeding in which such "damages" are claimed and to which the insured submits with our consent;

(ii) Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or

(iii) Any administrative proceedings as established under federal, state or local laws applicable to "wrongful acts" covered under this insurance.

3. **"Coverage territory"** means:

a. The United States of America (including its territories and possessions) and Puerto Rico; or

b. Anywhere in the world with respect to the activities of a person whose place of employment is in the territory described in paragraph 3.a. above, while he or she is away for a short time on your business, provided that the insured's responsibility to pay "damages" is determined in a suit on the merits (or any type of civil proceeding described under the definition of "claim") in and under the substantive law of the United States of America (including its territories and possessions) or Puerto Rico.

4. **"Damages"** means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing.

"Damages" include:

a. "Pre-judgment interest" awarded against the insured on that part of the judgment we pay;

b. Any portion of a judgment or award, to the extent allowed by law, that represents a multiple of the compensatory amounts, punitive or exemplary damages; and

c. Statutory attorney fees.

"Damages" do not include:

(1) Civil, criminal, administrative or other fines or penalties;

(2) Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money; or

(3) Judgments or awards because of acts deemed uninsurable by law.

5. **"Defense expense"** means payments allocated to a specific "claim" for its investigation, settlement, or defense, including:

a. Attorney fees and all other litigation expenses.

b. The cost of bonds to appeal a judgment or award in any "claim" we defend. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the Amount of Insurance available. We do not have to furnish these bonds.

d. Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "claim". However, these payments do not include attorney's fees or attorney's expenses taxed against the insured.

"Defense expense" does not include:

(1) Salaries and expenses of our employees or your "employees", other than:

(a) That portion of our employed attorneys' fees, salaries and expenses allocated to a specific "claim" for the defense of the insured; or

(b) The expenses described in paragraph d. above; or

(2) Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of Section III. LIMITS OF INSURANCE.

6. **"Employee"** means:

a. A person employed by you for wages or salary;

b. A person who is a current or former member of your board of directors; or

c. A "temporary worker".

However, "employee" does not include any:

(1) Independent contractor;

(2) Any employees of any independent contractor while acting within the scope of their employment; or

(3) Any "leased worker".

7. **"Employment Practices"** means any remedy which is sought by any of your:

a. "Employees";

b. "Leased workers";

c. Former "employees"; or

d. Applicants for employment by you,

under any civil employment law whether federal, state or local and whether arising out of statutory or common law, because of any of the following actual or alleged practices:

(1) Wrongful refusal to employ a qualified applicant for employment;

(2) Wrongful failure to promote;

(3) Wrongful deprivation of career opportunity;

(4) Wrongful demotion, evaluation, reassignment or discipline;

(5) Wrongful termination of employment, including constructive discharge;

(6) Employment related misrepresentation;

(7) Harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by any applicable federal, state or local statute; or

(8) Oral or written publication of material that:

(a) Slanders;

(b) Defames or libels; or

(c) Violates or invades a right of privacy.

8. **"Interrelated"** means having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**PB 05 89 03 11**

9. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. **"Pre-judgment interest"** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment, whether or not made part of the settlement, verdict, award or judgment.

11. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

12. **"Wrongful Acts"** means "employment practices".



| | |
|---|---|
| **Date prepared** | December 5, 2019 |
| **Notice of loss date** | November 13, 2019 |
| **Claim number** | 854203-GJ |
| **Policy number** | ACP BPFL3028304861 |
| **Questions?** | Contact Claims Associate Marc Lim, Esq. LIMM1@nationwide.com Phone 212-329-6936 Fax [employee fax phone] |

Sean Kelly
1591 S Randall Rd
Algonquin, IL  60102

## Claim details

| | | |
|---|---|---|
| Insurer: | Allied Insurance Co. of America | **EXHIBIT 3** |
| Policyholder: | Corral Three LLC | |
| Claimant: | Erika Camp | |
| Claim number: | 854203-GJ | |
| Loss date: | January 18, 2019 | |
| Loss location: | 1591 S RANDALL RD, ALGONQUIN, IL 60102-5933 | |

Dear Sean Kelly,

Nationwide on behalf of Allied Insurance Co of America ("Insurer") again acknowledges receipt of the following information:

1)  A Charge of Discrimination ("Charge"), dated January 18, 2019 (it is the Insurer's understanding, based on representations by the Insured, that the Charge was received in either April or May of 2019), dual filed with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on behalf of Erika Camp ("Plaintiff") against Corral Three, LLC ("Insured");

2) A Complaint, dated September 25, 2019, filed in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois, Case No. 19-L-000453 ("Complaint"), served on October 3, 2019, by Plaintiff against the Insured and Diego Cancela -Arcos (the undersigned was advised that Diego Cancela-Arcos is an Employee of the Insured, and therefore, an Insured Person under the Policy).

We are directing this letter to you as the authorized representative of the Insured.  To the extent that you are not acting on their behalf for insurance coverage purposes, we ask that you forward a copy of this letter to their insurance representatives, and forward to us the correct contact information.

The Policy contains General Liability Insurance, in addition to Employment Practices Liability Insurance. Based on the allegations in this matter, only the Employment Practices Liability Insurance would apply, therefore, the Insurer has only reviewed this matter under the Employment Practices Liability Insurance.

For the reasons set forth below, the Insurer respectfully denies coverage for this matter.  Should you have any questions or concerns after reading this letter, please feel free to contact me at any time.  To assist you in understanding this letter, we suggest that the Policy be reviewed together with this letter. This letter does not modify the terms and conditions of the Policy.  Please note that the words that appear in bold are defined in the Policy.

A. Policy

Case: 1:20-cv-00672 Document

This matter was reviewed under the Policy, specifically the Employment Practices Liability Insurance Endorsement ("EP Coverage Section") of the Policy, which has a Policy Period effective from June 6, 2018 to June 6, 2019.  The EP Coverage Section provides a $100,000 maximum aggregate for all Damages and Defense Expense and a Deductible of $2,500 for each Claim. The Policy has a Retroactive Date of June 6, 2017.

The Insuring Agreement of the EP Coverage Section provides that the Insurer will pay on behalf of the Insured for Damages in excess of the Deductible arising out of any Wrongful Acts to which this insurance applies, by reason of a Claim first made against any Insured during the Policy Period and reported to us during the Policy Period or within thirty (30) days thereafter.

Section I.1.4.d., Insuring Agreement, of the EP Coverage Section provides in pertinent part that all Claims by one or more claimants for Damages based on or arising out of ... an Interrelated (means having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes) series of Wrongful Acts ... by one or more Insureds shall be deemed to be one Claim and to have been made at the time the first of those Claims is made against any Insured.

B.  Complete Denial of Coverage

Based on the information currently known to the Insurer, no coverage is available for the Charge nor the Complaint under the EP Coverage Section.  Accordingly, for the reasons set forth below, the Insurer shall not be liable for any amounts, including but not limited to any defense fees or expenses or indemnity, incurred by the Insureds in connection with this matter.  As the Insurer will not be providing a defense, the Insured should take the necessary steps to protect its interests.
In pertinent part, a Claim is defined at EP Coverage Section VII.2. to mean written or oral notice presented by ... the EEOC or any other federal, state or local administrative or regulatory agency ... alleging that the Insured is responsible for Damages as a result of injury arising out of any Wrongful Act ... Claim includes any civil proceeding in which either Damages are alleged or fact finding will take place ... This includes ... any administrative proceedings as established under federal, state or local laws.  As such, the Charge constitutes a Claim under the Policy.  This matter was a Claim as of April or May 2019 (date Insured received the Charge).

The Charge and Complaint both contain the same allegations of sexual harassment and hostile work environment, therefore, under Section I.1.4.d. of the Policy, they are considered a single Claim deemed to have been made in April or May 2019.  Therefore, the Claim was made in the Policy Period from June 6, 2018 to June 6, 2019.

The Claim was not reported to the Insurer until November 12, 2019, approximately 5 months after the end of the Policy Period.  For this reason, the Insuring Agreement of the EP Coverage Section is not triggered, and no coverage is available for this matter under the EP Coverage Section.

C.  Policy ACP BPFL 3028304861

Notice of this matter was also submitted under Policy No. ACP BPFL 3028304861.  The Insurer issued Policy No. ACP BPFL 3028304861 to the Insured for the Policy Period from June 6, 2019 to June 6, 2020.

As discussed above, the Claim was made on or about April or May 2019, which is prior to the Policy Period.  As such, the Claim was not made during the Policy Period and, therefore, the Insuring Agreement has not been triggered and coverage is unavailable under Policy No. ACP BPFL 3028304861.

Case: 1:20-cv-00672 Document #: 28 Filed: 06/16/21 Page #: 2 of 3

D. Conclusion

In light of the foregoing analysis, we have not set forth all potential and actual coverage issues presented by this matter. We note that other provisions may also be potentially applicable to bar or limit coverage. The Insurer reserves all rights with respect to these provisions. No present or subsequent action taken by the Insurer is to be construed as a waiver of any position set forth in this letter or any rights otherwise available to it.

The Insurer's position with respect to this matter is based upon the information provided to date and is subject to further evaluation as additional information becomes available. The Insurer reserves its right to assert additional terms and provisions under the Policy and at law, which may become applicable as new information is learned, including the information requested here.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago 122 S. Michigan Avenue, 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Please contact me should you have any questions concerning the coverage under this Policy or other matters in this letter.

## For more information

If you have any questions or concerns, please contact me at 212-329-6936 or LIMM1@nationwide.com.

Sincerely,

Marc Lim, Esq.
Allied Insurance Co. of America
7 WORLD TRADE CTR
NEW YORK, NY 10007-2140

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767. You may also contact the Illinois Department of Insurance by telephone at 312-814-2420 or 217-782-4515 or through its website at: http://insurance.illinois.gov.

L0032146400701320

# IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

Case No. _19-MR-001601_

| Corral Three, LLC, Golden Corral Corporation, and Golden Corral Franchising Systems, Inc. <br> Plaintiff(s) | Allied Insurance Company of America <br> Defendant(s) | *Thomas M. Hartwell* <br> Clerk of the Circuit Court <br> Kane County, Illinois <br> 12/18/2019 <br><br> **FILED/IMAGED** |
|---|---|---|

SERVE:

Name: **Director of Insurance, Illinois Department of Insurance**

Address: **122 S. Michigan Ave., 19th Floor**

City, State & Zip: **Chicago, IL 60603**

File Stamp

Amount Claimed ___N/A___

| | |
|---|---|
| Pltf. Atty **Bradley Levison** | Add. Pltf. Atty **Carrie Herschman** |
| Atty. Registration No. **6280465** | Atty. Registration No. **6283083** |
| Address **401 S. LaSalle St., Suite 1302G** | Address **401 S. LaSalle St., Suite 1302G** |
| City, State and Zip **Chicago, IL 60605** | City, State and Zip **Chicago, IL 60605** |
| Attorney E-mail: **brad@hlhlawyers.com** | Attorney E-mail: **carrie@hlhlawyers.com** |

**RECEIVED**
**STATE OF ILLINOIS**
DEC 27 2019
**DEPT. OF INSURANCE**
**CHICAGO, ILLINOIS**

## SUMMONS

To the above named defendant(s):

☐   A.   You are hereby summoned and required to appear before this court in room _____ of the _____ at _____ m. on _____ to answer the complaint in this case, a copy of which is hereto attached. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

☒   B.   You are hereby summoned and required to file an answer in this case or otherwise file your appearance, in the Office of the Clerk of this Court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, judgment or decree by default may be taken against you for the relief prayed in the complaint.

☐   C.   You are further Notified that a dissolution action stay is in full force and effect upon service of this summons. The Conditions of stay are set forth on page two (2) of this summons, and are applicable to the parties as set forth in the statute.

  D.   E-filing is now mandatory for documents in civil cases with limited exemptions. To efile, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp or talk with your local circuit clerk's office.

TO THE SHERIFF OR OTHER PROCESS SERVER:

  This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. In the event that paragraph A of this summons is applicable, this summons may not be served less than three days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

  This summons may not be served later than 30 days after its date if paragraph B is applicable.

DATE OF SERVICE _____
(To be inserted by process server on copy left with the defendant or other person)

12/18/2019

WITNESS, *Thomas M. Hartwell*

Clerk of Court

Form 166-A (08/18)    Page 1 of 2



**DIE DATE**
01/07/2020

**DOC.TYPE:** SUMMONS
**CASE NUMBER:** 19MR001601
**DEFENDANT**
ALLIED INS CO OF AMERICA
122 S MICHIGAN AVE
CHICAGO, IL 60603
19TH FL

**SERVICE INF**
DOI

**ATTACHED**

L0032146400801320

Case No. _____

## SUMMONS (CONT.)

I certify that I served this summons on defendants as follows:

(a) - (Individual defendants - personal)

By leaving a copy and a copy of the complaint with each individual defendant personally, as follows:

| Name of Defendant | Place of Service | Date of service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(b) - (Individual defendants - abode):

By leaving a copy and a copy of the complaint at the usual place of abode of each individual defendant with a person of his/her family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his/her usual place of abode, as follows:

| Name of Defendant | Person with whom left | Date of service | Date of mailing |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

(c) - (Corporation defendants):

By leaving a copy and a copy of the complaint with the registered agent officer, or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent officer or agent | Date of service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d) - (Other service):

_____
Signature

SERVICE FEES

Service and return _____ $ _____

Miles _____ ......................... _____

Total ...................................................... $ _____

☐ Sheriff of _____ County

☐ Special Process Server

Sheriff of _____ County

☐ By _____ , Deputy

☐ Special Process Server
(See Order of Appointment in file)

L0032 1464009011320

## NOTICE TO DEFENDANTS - Pursuant to Supreme Court Rule

In a civil action for money (excess of $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1.   You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney to the Office of the Kane County Circuit Clerk, 540 S. Randall Rd., St. Charles, IL 60174.

2.   You may enter your appearance at the time and place specified in the summons by making your presence known to the Judge when your case is called.

In either event YOU MUST APPEAR IN PERSON OR BY ATTORNEY at the time and place specified in the summons or a default Judgment will be entered against you.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Circuit Court Clerk or the Sheriff's Office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the return date on the summons, notify the plaintiff or his/her attorney if you desire to do so. Request that he/she appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request of the Circuit Court Clerk or the Sheriff, as only the Judge can dismiss a case, and then only with a proper court order which must be entered in open Court.

---

## CONDITIONS OF DISSOLUTION ACTION STAY

### 750 ILCS 5/501.1

### Chapter 40, paragraph 501.1, Illinois Revised Statutes

(a)  Upon service of a summons and petition or praecipe filed under the Illinois Marriage and Dissolution of Marriage Act or upon the filing of the respondent's appearance in the proceeding, whichever first occurs, a dissolution action stay shall be in effect against both parties and their agents and employees, without bond or further notice, until a final judgment is entered, the proceeding is dismissed, or until further order of the court:

(1)  restraining both parties from physically abusing, harassing, intimidating, striking, or interfering with the personal liberty of the other party or the minor children of either party; and

(2)  restraining both parties from concealing a minor child of either party from the child's other parent. The restraint provided in this subsection (e) does not operate to make unavailable any of the remedies provided in the Illinois Domestic Violence Act of 1986.



**null / ALL**
**Transmittal Number: 20958552**
**Date Processed: 01/13/2020**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |

| | |
|---|---|
| **Entity:** | Allied Insurance Company Of America<br>Entity ID Number 3286167 |
| **Entity Served:** | Allied Insurance Company of America |
| **Title of Action:** | Corral Three, LLC, d/b/a the Golden Corral Buffet & Grill, Golden Corral Corporation and Gold Corral Franchising Systems, Inc vs. Allied Insurance Company of America |
| **Matter Name/ID:** | Corral Three, LLC, d/b/a the Golden Corral Buffet & Grill, Golden Corral Corporation and Gold Corral Franchising Systems, Inc vs. Allied Insurance Company of America (9926803) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Kane County Circuit Court, IL |
| **Case/Reference No:** | 19-MR-001601 |
| **Jurisdiction Served:** | Ohio |
| **Date Served on CSC:** | 01/13/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | IL Dept of Insur 12/27/2019 |
| **How Served:** | Client Direct |
| Sender Information: | Herschman Levison Hobfoll PLLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com